NOT FOR PUBLICATION (Doc. Nos. 7, 25)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____

JAMIE M. GOLDBERG,

        Plaintiff,

        v.

EGG HARBOR TOWNSHIP SCHOOL
DISTRICT, et al.,

        Defendants.
_____

Civil No. 11-1228 (RBK/KMW)

**OPINION**

**KUGLER**, United States District Judge:

    Jamie M. Goldberg ("Plaintiff") brings this matter against Egg Harbor Township ("the Township"), the members of the board of directors of the Township's school system, and several employees of the Township's school system (collectively, "Defendants"), claiming violations of the New Jersey Law Against Discrimination (NJLAD) (Counts One and Five), retaliation in violation of Plaintiff's rights under the First Amendment and NJ Constitution (Count Two), retaliation under the NJ Conscientious Employee Protection Act ("CEPA") (Count Three), Breach of Settlement Agreement (Count Four), violation of Plaintiff's Procedural and Substantive Due Process rights (Count Six), tortious interference with prospective economic advantage (Count Seven), and negligent infliction of emotional distress (Count Eight). Defendants have moved to dismiss Counts One, Four, Five, Six, Seven, and Eight, and to dismiss the members of the Township Board of Education, and several employees of the Township's school board.  Plaintiff has since voluntarily stipulated to the dismissal of the members of the

1

Township Board of Education as individual defendants to this action, and has voluntarily stipulated to the dismissal of Count Eight of Plaintiff's Complaint.

Defendants also bring counterclaims against Plaintiff for breach of contract (Count One) and the implied covenant of good faith and fair dealing (Count Two). Plaintiff has moved to dismiss these counterclaims. As explained below, the Court hereby grants in part and denies in part Defendants' partial motion to dismiss, and grants in part and denies in part Plaintiff's cross-motion to dismiss.

## I. BACKGROUND

Plaintiff was formerly employed by the Township Board of Education as a one-on-one aide. Pl. br. at 6. Plaintiff is disabled, having "been diagnosed with specific psychiatric disorders and a learning disability . . . ." Id. Plaintiff continued to be employed by the Township when an incident occurred with one of Plaintiff's students, whose parents filed a complaint with the Division of Youth and Family Services ("DYFS"). Id. The DYFS complaint ultimately resulted in a finding of "no cause." Id. Plaintiff alleges that despite the no-cause finding, and in violation of N.J.S.A. 18A:6-7(a), the Township retained the files related to the DYFS complaint against Plaintiff. Id.

Two years into Plaintiff's employment, the Township decided not to renew Plaintiff's contract into a third year, which would have given Plaintiff tenure. Id. at 7. Plaintiff then filed a Petition with the Commissioner of Education to challenge the Township's decision. Id. Plaintiff alleges that during the ensuing investigation of Plaintiff's Petition, Dr. Phillip Heery, the Superintendent of the Township Schools, testified that the Township utilized the dismissed DYFS Complaint in determining that Plaintiff's contract should not be renewed. Id. Ultimately, Plaintiff's Petition was resolved via a Settlement Agreement between Plaintiff and the Township

Board of Education entered into on June 17, 2008 and approved by the Commissioner of Education on July 24, 2008.  Id.

The Settlement Agreement stated that Plaintiff would be reinstated in the Township Schools as a "full time permanent secretary" beginning on September 1, 2008.  Id.  The Settlement Agreement specifically provided that Plaintiff "would not be guaranteed tenure" and that Plaintiff "would have to perform appropriately on evaluations just like every other secretary." Id.  The Settlement Agreement also provided that Plaintiff "waives, releases and gives up any and all other claims, demands, obligations, damages, liabilities, causes of action and rights, . . . against the Board . . . based upon any act, event or omission occurring before the execution of this Agreement . . . ."  Pl. Ex. D, § 2.

Plaintiff returned to work as a secretary in the Township school system in September 2008 and continued in her employment until March 19, 2010, when Plaintiff received a potential layoff notification due to Township budget difficulties.  Pl. br. at 8.  Plaintiff subsequently filed a "Tort Claims and Contractual Claims Notice" with the Township on April 7, 2010.  Id.  On May 14, 2010, Plaintiff's Supervisor, Henry Rodrique, provided an Employment Improvement Plan to Plaintiff, "clearly indicating to Plaintiff that he expected some improvements in certain areas." Id. at 9.  Plaintiff alleges that she was subsequently verbally notified that her position as a Secretary was being eliminated.  Id.  Plaintiff alleges that she was also verbally notified that her employment contract with the Township would not be renewed for the third year, which would have given Plaintiff tenure.  Id.

When Plaintiff discovered that she would not be renewed, Plaintiff alleges that she applied for "many new positions" within the Township School System.  Id.  However, despite applying for "all positions" available, Plaintiff alleges that she "received only one interview and

3

was not rehired." Id. Plaintiff then brought this Complaint in the Superior Court of New Jersey. Defendants subsequently removed the case to the District of New Jersey, and the case is currently before this Court on diversity jurisdiction pursuant to 28 U.S.C. § 1332.

### II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief can be granted. With a motion to dismiss, "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In addition to the allegations of the complaint, a court may consider matters of public record, documents specifically referenced in or attached to the complaint, and documents integral to the allegations raised in the complaint. Mele v. Fed. Reserve Bank of N.Y., 359 F.3d 251, 255 n. 5 (3d Cir. 2004).

In making that determination, a court must conduct a two-part analysis. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009); Fowler, 578 F.3d at 210-11. First, the court must separate factual allegations from legal conclusions. Iqbal, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Second, the court must determine whether the factual allegations are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 1950. Determining plausibility is a "context-specific task" that requires the court to "draw on its judicial experience and common sense." Id.

A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible.  See id.

### III. DISCUSSION

#### A. Plaintiff's Claims under the New Jersey Law Against Discrimination

Defendants argue that Plaintiff's NJLAD Claims are barred by the waiver provision of the CEPA, which states that "institution of an action in accordance with [CEPA] shall be deemed a waiver of rights and remedies available under any other . . . State law."  N.J.S.A. 34:19-8; see Teryek v. State of New Jersey, 2011 WL 977515, at *2 (Super. Ct. App. Div. 2011).  However, despite CEPA's waiver provision, New Jersey courts have found that plaintiffs may maintain a CEPA claim as well as other causes of action which do not require the same proof as the CEPA claim.  See Young v. Schering Corp., 141 660 A.2d 1153, 1158-59 (N.J. 1995) ("We find the doctrine of probable legislative intent a more reliable guide than the overly literal reading of the waiver provision . . . .").

Plaintiff argues that her NJLAD claims do not state a claim for retaliation, but rather for "failure to renew [P]laintiff's position or to provide her with alternative employment within the district on the basis of her disability."  Pl. br. at 18.  Because the Court finds that Plaintiff's Complaint does not state a claim for retaliation, Plaintiff's NJLAD claims are not barred by the CEPA waiver provision.

#### B. Plaintiff's Procedural Due Process Claims

Defendants argue that Plaintiff's due process claims should be dismissed because Plaintiff cannot identify a liberty or property interest in her position as a non-tenured employee.  The Fourteenth Amendment prohibits states from depriving any person of "life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. "Due process of law"

5

essentially requires that the government provide a person notice and opportunity to be heard in connection with the deprivation of life, liberty or property. Zappan v. Pennsylvania Board of Probation and Parole, 152 Fed. Appx. 211, 220 (3d Cir. 2005) ("The essential requirements of any procedural due process claim are notice and the opportunity to be heard."). To succeed on a Section 1983 claim for a violation of the Fourteenth Amendment's procedural protections, a plaintiff must prove: (1) that a state actor deprived her of a recognized "liberty" or "property" interest; and (2) that the deprivation occurred without adequate process. See Bd. of Curators of University of Missouri v. Horowitz, 435 U.S. 78, 82 (1978); Robb v. Philadelphia, 733 F.2d 286, 292 (3d Cir. 1984).  Property and liberty interests are "not generally created by the Constitution." Robb, 733 F.2d at 292 (discussing property interests); see Horowitz, 435 U.S. at 82-84 (discussing liberty interests).  "Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972).  A property interest exists if state law creates "a legitimate claim of entitlement to" the disputed interest.  Id.

      Hence, to establish a prima facie case of a procedural due process violation, a plaintiff must establish: (1) a deprivation of a constitutionally protected liberty or property interest, (2) state action, and (3) constitutionally inadequate process. See Rusnak v. Williams, 44 Fed. Appx. 555, 558 (3d Cir. 2002) ("Procedural due process claims, to be valid, must allege state sponsored-deprivation of a protected interest in life, liberty or property. If such an interest has been or will be deprived, procedural due process requires that the governmental unit provide the individual with notice and a reasonable opportunity to be heard.") (citation omitted); Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000).

To have a property interest, Plaintiff must demonstrate "more than an abstract need or desire for it. . . . He must, instead, have a legitimate claim of entitlement to it" under state or federal law. Board of Regents v. Roth, 408 U.S. 564, 577 (1972). In Board of Regents, the Court addressed the question of whether or not a teacher at Wisconsin State University - Oshkosh had a property interest in employment after he was terminated/non-renewed on June 30, 1969. Id. at 578. The Court noted that the terms of the contract under which she was employed expired on June 30, 1969. The contract did not provide for renewal. Consequently, the terms of the appointment secured no interest in re-employment for the next year. The Supreme Court found there was no state statute or university rule or policy that secured the interest in re-employment either. Consequently, it concluded that he had no property interest sufficient to require university authorities to give him a hearing when they declined to renew his contract of employment. Id.

Regarding the process required under the Fourteenth Amendment, "due process is not a fixed concept, but a flexible doctrine that varies with the particular circumstances." Van de Zilver v. Rutgers Univ., 971 F. Supp. 925, 932 (D.N.J. 1997) (citing Zinermon v. Burch, 494 U.S. 113, 127 (1990)). The "requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Kahn v. United States, 753 F.2d, 1208, 1218 (3d Cir. 1985).

Here, Plaintiff states that she was a non-tenured employee of the Board of Education. According to the Township Board of Education, non-tenured employees must have their contracts renewed year to year by a Board vote. Similar to the plaintiff in Board of Regents, Plaintiff had no right of expectation to continued employment for the 2010-2011 school year. Plaintiff has not presented any authority under state law which creates property interests in her position. Furthermore, Plaintiff had the opportunity to file a petition with the Commissioner of

7

Education to be heard and to challenge the Township's decision. Therefore, Plaintiff was not deprived of any procedural due process right.

Next, Plaintiff attempts to state a cause of action under the "stigma-plus" theory espoused in Strum v. Clark, 835 F.2d 1009, 1012-13 (3d Cir. 1987). Pl. br. at 20. The Third Circuit clarified that there were two prongs to this test. The "stigma" prong requires a plaintiff to "allege[] that the purportedly stigmatizing statement(s) (1) were made publicly, and (2) were false." Hill v. Borough of Kutztown, 455 F.3d 225, 236 (3d Cir. 2006) (citations omitted). The Hill Court recognized the factors required to satisfy the "plus" prong were more "equivocal." Id. at 237. Nonetheless, the Hill Court went on to hold that "a public employee who is defamed in the course of being terminated or constructively discharged satisfies the 'stigma-plus' test even if, as a matter of state law, he lacks a property interest in the job he lost." Id. at 238.

Here, the Court finds that Plaintiff does not allege any public statement. Plaintiff alleges that she was not being considered for another position in the Township School System because the School System was retaliating against her for filing a Petition that challenged her discharge or was improperly discriminating against her based on an unfounded DYFS complaint. Furthermore, Plaintiff does not allege publication of any false statement. Accordingly, her due process violation claim must fail as a matter of law.

### C.  Plaintiff's Substantive Due Process Claim

Unlike the substantive rights protected by procedural due process, which emanate from state law, substantive due process rights emanate from the Constitution. Regents of Univ. of Michigan v. Ewing, 474 U.S. 214, 229-30 (1985) (Powell, J., concurring). Substantive due process rights are therefore much narrower in scope. Bell v. Ohio State Univ., 351 F.3d 240, 249-50 (6th Cir. 2003). The Third Circuit has refused to recognize a constitutionally protected

8

property or liberty interest in continuing tenured employment, let alone non-tenure employment. See Nicholas v. Pennsylvania State Univ., 227 F. 3d 133, 141 (3d Cir. 2000).

Moreover, the Supreme Court has cautioned that it is "reluctant to expand the concept of substantive due process." Washington v. Glucksberg, 521 U.S. 702, 720-21 (1997). It has limited substantive due process protections to interests "protected by specific constitutional guarantees, . . . freedom from government actions that shock the conscience, . . . and certain interests that [are] so rooted in the traditions and conscience of our people as to be fundamental." Bell, 351 F.3d at 250 (internal citations and quotation marks omitted).

With the exception of certain fundamental rights, which are not implicated here, a state improperly deprives a person of a substantive due process right if it acts arbitrarily and capriciously. Daniels v. Williams, 474 U.S. 327, 331 (1986). To establish that an action or policy is arbitrary and capricious, a plaintiff must prove that the state did not have a rational basis for its conduct or that it was motivated by bad faith or ill will unrelated to a legitimate government objective. Ewing, 474 U.S. at 227-28; Horowitz, 435 U.S. at 91.

Plaintiff's substantive due process claim fails. First, Plaintiff cites no evidence or legal authority to support her allegation that she has a constitutionally recognized interest in reinstatement as a non-tenured school employee. Moreover, courts have consistently held that even a tenured employee does not have a fundamental property interest afforded substantive due process protection. See Nicholas, 227 F. 3d at 141 (holding tenured public employment is not a "fundamental property interest entitled to substantive due process protection"); Emri v. Evesham Township Bd. of Educ., 327 F. Supp. 2d 463, 471 (D.N.J. 2004) (finding interest in tenure public employment not entitled to substantive due process protection); Homar v. Gilbert, 67 F. Supp. 2d

9

559, 573 (N.D. Pa. 1999) ("public employment is not a fundamental property interest that implicates substantive due process where an individual, non-legislative employment decision is at issue."). Since even tenured employees do not have a fundamental property interest afforded due process protection, Plaintiff, as a non-tenured employee, does not have a Fourteenth Amendment claim. Therefore, all substantive due process claims pursuant to Count Six must be dismissed. In light of the Supreme Court's admonition that courts should not readily expand the scope of substantive due process protections, this Court finds no basis for concluding that Plaintiff has a substantive due process right to be reinstated as a non-tenured school employee. See Bell, 351 F.3d at 249-50.

Second, even if the Court were to find that Plaintiff has a constitutional interest in reinstatement as a non-tenured school employee, there is no evidence that Defendants arbitrarily and capriciously deprived her of that right. Moreover, even if Plaintiff were able to show a property or liberty interest in having her non-tenure employment contract renewed, The Board of Education of the Township had reviewed Plaintiff's formal evaluations and had taken a public session vote prior to dismissing Plaintiff. Pl. Ex. B at 4. Plaintiff contests that the Board wrongly dismissed Plaintiff because there were four abstentions in the public session vote, and of the remaining five votes, three were in favor of renewing Plaintiff's contract and two were against renewing Plaintiff's contract. Id. at 5. However, the Board decided that because there was not a majority of the nine votes in favor of renewing Plaintiff's contract, Plaintiff's contract would not be renewed. While Plaintiff clearly disagrees with the Board's policies and procedures for contract renewal, Plaintiff cannot establish that the Township arbitrarily and capriciously deprived her of a right to have her non-tenure employment contract renewed.

### D. Plaintiff's Tortious Interference with Economic Advantage Claim

Defendants argue that Plaintiff cannot maintain a cause of action for tortious interference with economic advantage against the individual employees of the Township Board of Education because Plaintiff has not alleged that any Defendants conduct is outside the scope of his or her employment. In DiMaria Construction, Inc. v. Interarch, the court stated that "a clear-cut consensus has emerged that if an employee or agent is acting on behalf of his or her employer or principal, then no action for tortious interference will lie." 729 A.2d 555, 568 (N.J. Super. Ct. App. Div. 2011) (citing Fioriglio v. City of Atl. City, 996 F.Supp. 379, 392-93 (D.N.J.1998), aff'd, 185 F.3d 861 (3d Cir.1999), cert. denied, 528 U.S. 1075, 120 S.Ct. 789, 145 L.Ed.2d 666 (2000)).

The Third Circuit has held that an employee falls outside the scope of his employment if the employee "acts for personal motives, out of malice, beyond his authority, or otherwise not 'in good faith in the corporate interest.'" See Varrallo v. Hammond Inc., 94 F.3d 842, 849 n. 11 (3d Cir.1996). Plaintiff has not clearly alleged any of these facts in the instant case. Plaintiff has only alleged that the employees of the Township Board of Education have falsely refused to renew Plaintiff's contract for reasons of discrimination or retaliation. However, the Court will not grant a motion to dismiss if "the plaintiff can prove any set of facts consistent with his allegations that will entitle him to relief." Pension Benefit Guarantee Corp. v. White Consol. Indus., 998 F.2d 1192, 1196-97 (3d Cir. 1993). The Court finds that there are potential material facts consistent with Plaintiff's allegations which, if proved by Plaintiff, could entitle Plaintiff to relief on this claim. Therefore, the Court denies Defendants' motion to dismiss Plaintiff's claim for tortious interference with economic advantage.

### E. Plaintiff's Breach of Contract Claim

Defendants argue that "[p]ursuant to both or either the NJLAD and/or CEPA, the breach of contract claim is subsumed and must be dismissed." Def.'s Reply br. at 4. However, as noted above, New Jersey courts have found that plaintiffs may maintain a CEPA claim as well as other causes of action which do not require the same proof as the CEPA claim. Plaintiff's claim for breach of contract is not a retaliation claim, and therefore is not barred by CEPA.

Similarly, Plaintiff's breach of contract claim is not barred by the NJLAD. The NJLAD only bars common law claims that are duplicative of claims under the NJLAD. See Dale v. Boy Scouts of America, 734 A.2d 1196, 1219 (N.J. 1999). N.J.S.A. 10:5-27 states that "[n]othing [in the NJLAD] shall bar, exclude or otherwise affect any right or action, civil or criminal, which may exist independently of any right to redress against or specific relief from any unlawful employment practice or unlawful discrimination." Plaintiff's claim for breach of contract is not duplicative of her NJLAD claim. Therefore, Plaintiff's claim for breach of contract is not barred by the NJLAD.

### F. Defendants' Claims for Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiff moves to dismiss Defendants' counterclaims that Plaintiff breached the Settlement Agreement and that Plaintiff failed to deal with Defendants fairly and in good faith. In particular, Defendants' counterclaim alleges that Plaintiff violated the portions of the Settlement Agreement pertaining to confidentiality/nondisclosure and release of claims against Defendants. Plaintiff argues that there is a strong public policy against enforcement of confidentiality clauses in settlement agreements with public entities. Pl. br. at 11 (citing Asbury Park Press v. County of Monmouth, 986 A.2d 678, 679 (N.J. 2010) ("A governmental entity

cannot enter into a voluntary agreement at the end of a public lawsuit to keep a settlement confidential, and then claim a 'reasonable expectation of privacy' in the amount of that settlement.")).

Defendants claim that the confidentiality clause is enforceable because Plaintiff voluntarily signed the Agreement and was advised by counsel prior to signing the Agreement. Defendants argue that public policy favors the enforcement of contracts, and that Plaintiff fails to allege any bad faith or fraud on the Defendants' part in the formation of the contract. Defendants further claim that Plaintiff signed the Agreement in 2008, and only now argues that the confidentiality clause of the contract is unenforceable. Def. Response br. at 10-11.

The Court finds that the confidentiality clause of the Agreement is unenforceable as a matter of public policy in New Jersey. In Asbury Park, a former county employee filed a complaint against the county. Asbury Park, 986 A.2d at 679. The matter was subsequently settled, and the settlement agreement had a confidentiality clause. See id. The New Jersey Supreme Court held that the Open Public Records Act (OPRA), N.J.S.A. 47:1A–1 to –13, required disclosure of thee settlement agreement. Id. Central to the court's decision was the reasoning that "[h]ad the matter not settled, the lawsuit would have unfolded in a public trial, and any outcome would have been revealed in open court." Id. The Court finds that Asbury Park controls this case and bars Defendants from counterclaiming for breach of the confidentiality clause of the Agreement.

Plaintiff also moves to dismiss Defendants' counterclaim that Plaintiff violated the portion of the Settlement Agreement pertaining to release of Plaintiff's claims against Defendants. However, Plaintiff counters that the Settlement Agreement was a waiver and release of Plaintiff's claims for discrimination and/or retaliation in relation to Defendants' failure

to renew Plaintiff's contract in 2006. Plaintiff further clarifies that her current claims for retaliation and/or discrimination are based upon facts that occurred subsequent to the signing of the Settlement Agreement. Because the Court finds that Plaintiff's claims are not based on claims that Plaintiff had waived and released pursuant to the Settlement Agreement, Defendants' breach of contract claim is denied.

Because Defendants are correct that parties have a duty to deal in good faith and abide by the terms of agreements that they voluntarily enter into, however, Plaintiff's cross-motion to dismiss the Defendants' counterclaim for breach of the implied covenant of good faith and fair dealing must be denied. The Court finds that Defendants could potentially prove a "set of facts consistent with his allegations that will entitle him to relief." Pension Benefit Guarantee Corp., 998 F.2d at 1196-1197.

## IV.   CONCLUSION

For the reasons detailed above, the Court grants in part and denies in part Defendants' partial motion to dismiss, and grants in part and denies in part Plaintiff's cross-motion to dismiss. An appropriate order shall enter today.


Dated: 11/14/2011                                              /s/ Robert B. Kugler
                                                               ROBERT B. KUGLER
                                                               United States District Judge

14