NOT FOR PUBLICATION  (Doc. No. 38)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| JAMIE M. GOLDBERG | : |
| Plaintiff, | : Civil No. 11-1228 (RBK/KMW) |
| v. | : **OPINION** |
| EGG HARBOR TOWNSHIP SCHOOL DISTRICT, et al. | : |
| Defendants. | : |

**KUGLER**, United States District Judge:

This matter comes before the Court on the motion for summary judgment by the Egg Harbor Township Board of Education ("the Board"), Joetta Surace ("Ms. Surace"), Kateryna W. Bechtel ("Ms. Bechtel"), Henry Rodrique ("Mr. Rodrique"), and Dr. Scott McCartney ("Dr. McCartney") (collectively, "Defendants") pursuant to Federal Rule of Civil Procedure 56. Jamie M. Goldberg ("Plaintiff") alleges that her employment contract was not renewed and that her applications for other secretarial positions within the school district were not properly considered as the result of Defendants' discrimination and retaliation against her. Specifically, she claims violations of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A 10:5-4.1 to -29.1 (Count 1 and 5), the First Amendment and New Jersey Constitution (Count 2), and the Conscientious Employee Protection Act ("CEPA"), N.J.S.A. § 34:19-2(e) (Count 3). Plaintiff also asserts state law claims for breach of contract (Count 4) and tortious interference with

1

economic gain and employment (Count 7). For the reasons expressed below, Defendants' motion for summary judgment is GRANTED.

## I.   BACKGROUND[1]

Plaintiff worked for the Egg Harbor Township Board of Education as a One-on-One Aid from 2004 through 2006. Pl. Statement of Undisputed Facts ("SUF") ¶1. She is disabled, having "been diagnosed with specific psychiatric disorders and a learning disability." Id. ¶ 3. After an incident with a student that led to a DYFS complaint, Plaintiff was denied a third year contract in 2006 and filed a petition with the Commissioner of Education challenging the decision. Id. ¶ 19. The parties eventually resolved the matter by executing a settlement agreement ("Settle Agreement") which specified that Plaintiff "would be working as a full time permanent secretary," and that she "would not be guaranteed tenure." Def's. Ex. K, §1, ¶¶ 1-2. The Settlement Agreement also stated that Plaintiff "would have to perform appropriately on evaluations just like every other secretary." Id.

Plaintiff then began working as a ten-month secretary in the facilities department where her duties included, "managing attendance, receiving call-outs, arranging for substitutes, and payroll." Id. ¶ 30 - ¶ 33. On March 19, 2010, Plaintiff, along with approximately 500 other employees received a letter advising of potential future layoffs. Def's. SUF ¶ 35. In response, Plaintiff filed a Tort and Contractual Claims Notice with the Superintendent and members of the Board of Education on April 7, 2010. Pl. SUF ¶ 38. On April 23, 2010, all staff members received a letter again advising of potential layoffs due to budget issues. Id. ¶ 39; Def's. Ex. N. On May, 14, 2010, just one month after filing her Tort and Contractual Claims Notice, Plaintiff was provided an Employment Improvement Plan, which she alleges included her worst

---

[1] A detailed recital of the facts can be found in the Court's November 14, 2011 opinion (Doc. No. 31).

performance evaluation to date. Id. ¶ 39. Plaintiff's position was then terminated and she was rejected for all the other available secretarial positions to which she applied. Id. ¶¶ 43-45.

Plaintiff alleges that Defendants were aware that she had a disability and did not renew her contract or consider her for other positions on that basis. Def. Ex. A at 7. In support, she notes comments by Ms.Surace acknowledging that she had a disability during the original DYFS investigation. Pl. Ex. B, 20:14-21:5. Additionally, she references a number of statements by Dr. McCartney indicating similar knowledge of her disability. Pl. SUF ¶ 49 and ¶ 50.

Defendants counter that their decision was not motivated by discriminatory intent, but rather was necessary due to budget cuts. Def. SUF ¶ 37. Mr. Rodrique, the director of facilities, determined this was possible because the school would be transitioning to a computerized system of taking attendance, eliminating most of Plaintiff's responsibilities. Id. ¶ 46 and 50. The full time, twelve-month secretary in the department could perform the remainder of Plaintiff's duties. Id. ¶ 48 and 49. Defendants' further contend that Plaintiff was not considered for the other open secretarial positions because she lacked the requisite skill set.

## II.      LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine dispute as to a material fact exists only if the evidence is such that a reasonable jury could find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When the Court weighs the evidence presented by the parties, the Court is not to make credibility determinations regarding witness testimony. Sunoco, Inc. v. MX Wholesale Fuel Corp., 565 F.Supp.2d 572, 575 (D.N.J.2008). "The evidence of the non-movant

is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

However, to defeat a motion for summary judgment, the nonmoving party must present competent evidence that would be admissible at trial. See Stelwagon Mfg. Co. v. Tarmac Roofing Sys., 63 F.3d 1267, 1275 n. 17 (3d Cir.1995). The nonmoving party "may not rest upon the mere allegations or denials of" its pleadings and must present more than just "bare assertions [or] conclusory allegations or suspicions" to establish the existence of a genuine issue of material fact. Fireman's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir.1982) (citation omitted); see Fed.R.Civ.P. 56(e). "A party's failure to make a showing that is 'sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' mandates the entry of summary judgment." Watson v. Eastman Kodak Co., 235 F.3d 851, 857–58 (3d Cir.2000) (quoting Celotex Corp., 477 U.S. at 322).

## III. DISCUSSION

Plaintiff brings myriad claims based on Defendants' alleged consideration of her disability and allegedly unlawful retaliation.  Specifically, Plaintiff asserts violations of (1) the NJLAD, (2) the First Amendment and New Jersey Constitution, and (3) CEPA.  Plaintiff also alleges Defendants (4) breached the Settlement Agreement and (5) tortiously interfered with her economic gain and employment by failing to act in good faith.  Defendants move for summary judgment on each of these claims.  The Court will first begin with Plaintiff's First Amendment claim before moving to the remaining claims.

### 1. *First Amendment Retaliation*

"A public employee has a constitutional right to speak on matters of public concern without fear of retaliation."  Baldassare v. State of N.J., 250 F.3d 188, 194 (3d Cir. 2001).

However, this right is not absolute when faced with the government's interest in exercising some control over the public workforce. Brennan v. Norton, 350 F.3d 399, 412 (3d Cir. 2003). When an employee claims unconstitutional retaliation, courts employ a two-step analysis that balances the First Amendment rights of the public employee against the government's interests as an employer. Hill v. Borough of Kutztown, 455 F.3d 225, 241 (3d Cir. 2006). First, the plaintiff must demonstrate that the activity in question is protected under the First Amendment. Id. A public employee's actions are protected under the First Amendment when they satisfy a three-part test: 1) the employee must have been acting as a citizen, 2) the action must involve a matter of public concern, and 3) the action is protected if the employer did not have "an adequate justification for treating the employee differently from any other member of the general public as a result of the statement he made." Hill, 455 F.3d at 241-42. Once this threshold is met, the plaintiff is required to demonstrate that the protected activity "was a substantial or motivating factor in the alleged retaliatory action." Id.

    Defendants argue that Plaintiff cannot establish that she engaged in protected activity because her speech did not raise a matter of public concern, but rather was about her own private concerns. Defendant further argues that even if Plaintiff can demonstrate that her speech involved a matter of public concern, she cannot establish that her interests in the speech outweighed Defendant's legitimate non-discriminatory reasons; nor can she demonstrate that the protected speech was a substantial or motivating factor in the alleged retaliatory action. Defs. Br. At 17-18. The Court must first note that Defendants' argument that Plaintiff's speech was not a matter of public concern because she complained only of her own mistreatment is not consistent with the law. The Third Circuit has specifically rejected this argument. see also Rode v. Dellarciprete, 845 F.2d 1195, 1201-02 (3d Cir. 1988) (holding that an employee's comments

regarding racial discrimination and animus were protected, even if they were expressed because of her own personal employment problems). However, the Court need not analyze Plaintiff's claim at length because even if Plaintiff established that she engaged in protected activity, she has not shown any connection between her complaint and the adverse employment action, let alone that her activity played any substantial or motivating factor. Therefore, Defendant is entitled to summary judgment on this claim.[2]

### 2. *NJLAD*

Plaintiff also alleges that Defendants violated the NJLAD when they did not renew her position in the facilities department or employ her in another position based on her disability. The NJLAD states that "[a]ll persons shall have the opportunity to obtain employment ... without discrimination because of . . . disability." N.J.S.A. 10:5-4.

NJLAD claims are evaluated using the familiar McDonnell-Douglas burden shifting framework. Accordingly, a plaintiff must first establish a *prima facie* case of discrimination. 411 U.S. 792 (1973). To establish a *prima facie* case of disability discrimination, a plaintiff must demonstrate that: "(1) [she] was handicapped or disabled within the meaning of the statute; (2) [she] was qualified to perform the essential functions of the position of employment, with or without accommodation; (3) [she] suffered an adverse employment action because of the handicap or disability; and (4) the employer sought another to perform the same work after plaintiff had been removed from the position." Victor v. State, 952 A.2d 493, 501 (N.J. App. Div 2008) (citing Maher v. N.J. Transit Rail Operations, 593 A.2d 750, 763 (N.J. 1991

---

[2] The Court notes that even if Plaintiff had satisfied her burden on the First Amendment claim, Defendant would still be entitled to summary judgment. When a court finds that a plaintiff engaged in protected activity and that protected activity was a substantial or motivating factor in the adverse employment action, the burden shifts to the employer to prove that the "allegedly retaliatory action would have been taken absent the protected [speech]." Reilly v. City of Atl. City, 532 F.3d 216, 224 (3d Cir. 2008). Defendant's legitimate non-discriminatory reasons for taking the adverse employment action satisfy this standard.

6

If a plaintiff establishes a *prima facie* case, the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the adverse employment action. Gerety v. Atl. City Hilton Casino Resort, 877 A.2d 1233, 1237 (N.J. 2005) (citing Anderson v. Exxon Co., 446 A.2d 486 (N.J. 1982)); McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). If the employer satisfies this burden the plaintiff may only withstand summary judgment by proving that the reason articulated by the employer was merely a pretext for discrimination. Zive v. Stanley Roberts, Inc., 867 A.2d 1133, 1140 (N.J. 2005). A plaintiff may accomplish this task "by *either* (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." DeWees v. RCN Corp., 883 A.2d 387, 396 (App. Div. 2005) (quoting Fuentes v. Perskie, 32 F.3d 759, 761-62 (3d Cir. 1994). In order to discredit a defendant's proffered reasons, a plaintiff must demonstrate that a reasonable fact finder could find the non-discriminatory reasons "unworthy of credence." DeWees,  883 A.2d at 397.

Defendants assume that, for the purposes of this motion, Plaintiff can satisfy the first three elements of the *prima facie* case. However, they maintain that they did not seek another to perform the same work because the District was transitioning to a computerized system for taking attendance. Def's. Br. at 6. Since the remainder of Plaintiff's obligations would be assigned to the full time, twelve-month secretary, Defendants' argue that no one was hired to perform Plaintiff's duties. Courts have consistently recognized that the evidentiary burden at the *prima facie* stage is "rather modest," and intended only to demonstrate that the "plaintiff's factual scenario is compatible with discriminatory intent-i.e., that discrimination *could* be a

reason for the employer's action." Zive, 867 A.2d at 1139. Given this low standard, the Court is satisfied that Plaintiff established a *prima facie* case of discrimination.

Because Plaintiff has established a *prima facie* case of discrimination, Defendants must put forth evidence of a legitimate non-discriminatory reason for the adverse employment action. Zive, 867 A.2d at 1140 (citing Clowes v. Terminix Int'l, Inc., 538 A.2d at 805). Defendants have certainly satisfied this burden. Defendants contend that the school district faced an estimated $8,000,000 net loss for the 2010-2011 school year. To combat this challenge, Mr. Rodrique, the director of facilities was requested to examine his department to determine whether any positions could be eliminated. Def's SUF ¶ 46. Mr. Rodrique found that Plaintiff's position could be merged with the full time, twelve-month secretary because "one of Plaintiff's primary job duties was attendance" and "the District was going to a computerized system." Def's. Br. at 6. This is a legitimate non-discriminatory reason for the adverse employment action. see Frintner v. TruePosition 2012 WL 3651131 (E.D. Pa. Aug. 27, 2012) (accepting budget cuts as a legitimate nondiscriminatory reason).

Defendants also argue that Plaintiff was not hired for the other secretarial positions to which she applied because she was not qualified. Defendants state that although Plaintiff could "perform the mundane tasks provided to her as a ten month secretary," she could not have performed the tasks merged into the new single secretarial position in the facilities department. Def's Br. at 4. This is similarly a sufficient justification to shift the burden back to Plaintiff.

Plaintiff has not presented any evidence to establish pretext, as required for her claim to withstand the summary judgment. She attempts to discredit Defendants' financial considerations by arguing that her "position was one which was specifically created to fill a gap in the facilities department as a result of the retirement of a twelve-month secretary and the departure of a clerk

8

position." Pl. Br. at 6. However, this fact does not undermine Defendants' arguments regarding the budget cuts or the transition to computerized attendance-taking in the facilities department. Plaintiff has failed to produce any evidence that indicates that Defendants' reason for taking the adverse employment action is "unworthy of credence."

Plaintiff has also failed to demonstrate that discrimination was more than likely a motivating or determinative cause for the adverse employment action. Plaintiff highlights a number of statements by Defendants regarding her disability that she argues can establish pretext. She focuses most on a statement by Dr. McCartney, the Superintendent, in which he demonstrated knowledge of Plaintiff's disability. Dr. McCartney said:

> …Do I think and did I think that Miss Goldberg had difficulty making decisions independently, did I think that Miss Goldberg had difficulty interacting with students that had a lot of variability to their day-to day operations and that communication and the things that have been listed in the past as problems continue to be a problem, yes. If they were connected to her disability, then I guess the answer is that her disability in fact had a part to play in her interactions. Pl. Ex. D at 75:6-77:12.

Despite Plaintiff's contention otherwise, this statement does not in and of itself establish pretext. First, the mere fact that Dr. McCartney was aware of Plaintiff's disability while she was a teacher does not in any way establish that she was discriminated against on that basis. Moreover, the statement referenced Plaintiff's performance in the classroom where she interacted with students, not her performance as a secretary in the facilities department. Plaintiff similarly relies on Dr. McCartney's statement that "Miss Goldberg didn't possess the skill set to be the sole manager of the facilities, grounds and custodial departments." Pl. Ex. D at 140:22. However, this statement, if anything bolsters Defendants' arguments that Plaintiff was not considered for other positions because she was not qualified.

9

Next, Plaintiff argues that she can establish pretext because Mr. Rodrique gave her a negative evaluation and ultimately suggested that her position be eliminated. Plaintiff notes that, as her direct supervisor, Mr. Rodrique had access to her personnel file and therefore knew she was disabled. Pl. Br. at 5. Assuming that Mr. Rodrique even knew Plaintiff was disabled, of which there is no evidence, Plaintiff has not established that this knowledge influenced his decision-making. Mr. Rodrique stated multiple times that he based his decision on the "effectiveness of [Plaintiff's] relationships with other staff members, parents, students and visitors," as well as Plaintiff "taking on responsibility without prior notification or responsibility without prior notification or authorization by the custodial coordinator, custodial supervisor." Def's. Ex. M; Pl. Ex. F. at 54:8-21.

Finally, Plaintiff refers to the statement of Ms. Surace, the Human Resources Director, in which she described why Plaintiff was not considered for certain secretarial positions. Ms. Surace stated:

> Top of my head, she applied for my secretary. She applied for the attendance receptionist, which, again, I did not consider her for because it is a bear of a job and I've had people leave that position and I've had to retool it several times to get someone to stay. So I just knew it was too much for her, and the other positions were secretaries in various buildings and because they were schools, I did not consider her for those positions. And, again, her skill set. If they were like the secretary to the principal, I knew that it would be too much responsibility for her. Pl. Ex. B at 80:18-81:5.

This statement again supports Defendants' proffered non-discriminatory reason for not hiring Plaintiff in another secretarial position. Ms. Surace's statements indicate that in her opinion; (1) Plaintiff was not qualified for any of the positions for which she applied, and (2) Plaintiff was contractually not allowed to work in a school building and could therefore not be considered for those positions. Nothing in her statement indicates that Plaintiff was not considered because she

was disabled. Plaintiff has not produced any evidence that Defendants' reasons for firing and failing to hire her were pretextual. Therefore, summary judgment must be entered in Defendants' favor on the NJLAD claim.

### 3. *CEPA*

Plaintiff also alleges that Defendants' non-renewal of her contract and subsequent failure to hire her constituted retaliation in violation of the CEPA. CEPA "protect[s] and encourage[s] employees to report illegal or unethical workplace activities." Abbamont v. Piscataway Tp. Bd. of Educ., 650 A.2d 958, 971 (N.J. 1994); Barratt v. Cushman & Wakefield of New Jersey, Inc., 675 A.2d 1094 (N.J. 1996). Specifically, it prohibits employers from retaliating against an employee because the employee "[d]isclos[ed], or threaten[ed] to disclose to a supervisor or to a public body an activity, policy or practice of the employer ... that the employee reasonably believ[ed] ... [was] in violation of a law, or rule or regulation promulgated pursuant to law."

As with the NJLAD claim, the Court will employ the McDonnell-Douglas framework to analyze Plaintiff's CEPA claim. Kolb v. Burns, 727 A.2d 525, 531 (N.J. App. Div. 1999). To establish a *prima facie* case of retaliation in violation of CEPA, a plaintiff must demonstrate that (1) she reasonably believed that her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law; (2) she performed a 'whistle-blowing' activity as described by the statute; (3) an adverse employment action was taken against her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action. Id. at 530; Maimone v. City of Atlantic City, 903 A.2d 1055, 1060 (N.J. 2006); Dzownar v. McDevitt 828 A.2d 893 (N.J. 2003); Blackburn v. United Parcel Service, Inc., 179 F.3d 81, 92 (3d Cir. 1999). When evaluating a CEPA claim, courts should recognize the remedial nature of

the statute and construe it "liberally to effectuate its important social goal." Dzwonar, 929 A.2d at 901 (citing Abbamont 650 A.2d at 971).

Defendants contend that Plaintiff did not perform a "whistle-blowing activity" as defined by the CEPA statute and that even if Plaintiff was a whistleblower, she has failed to establish a causal connection between the "whistle-blowing activity" and adverse employment action. Plaintiff argues that she received a negative evaluation, was not renewed in her secretarial position, and was not considered for other employment within the school district in retaliation for her previously petitioning the Office of Administrative Law, and for filing a Tort and Contractual Claims Notice on April 7, 2010. Pl. Br. at 18. According to Plaintiff, she reasonably believed that "Defendants' conduct was in retaliation for Plaintiff's petition since each state that Plaintiff was forbidden from being in a school building." Id. at 19.

The law is not settled as to whether filing an administrative complaint or law suit under similar circumstances constitutes "whistle-blowing activity" covered by the CEPA statute. Hester v. Parker, A-1681-09T1, 2011 WL 1404886 (N.J. Super. Ct. App. Div. Apr. 14, 2011) ("Whether filing a complaint with an administrative agency or court of law is a disclosure to a public body and a whistle-blower activity has received scant attention, and the existing authority is in conflict."). Two district courts in the District of New Jersey have encountered plaintiffs who filed complaints with the Equal Employment Opportunity Commission (EEOC) and reached different conclusions on whether that constituted "whistle-blowing." compare Smith v. Travelers Mortgage Services, 699 F.Supp. 1080, 1081 (D.N.J.1988) (holding that "[f]iling an EEOC claim does not constitute a disclosure under the Act nor does such a charge fall under the "providing information" section of the statute.") with Sandom v. Travelers Mortgage Services, Inc., 752 F.Supp. 1240, 1244 (D.N.J.1990), aff'd, 998 F.2d 1005 (3d Cir.1993) (holding that

disclosure of alleged gender-based discrimination to the EEOC was undoubtedly within the plain language of CEPA).

Though the Court recognizes this tension in the law, the Court need not decide between these two conflicting opinions. Even assuming *arguendo* that Plaintiff could establish she was a "whistle-blower" under CEPA; she struggles to show a causal connection between her adverse employment action and either activity that she defines as "whistle-blowing." The two year gap between Plaintiff's petition to the Commissioner of Education and her adverse employment action is simply too great to support a causal connection. More generally, however, Plaintiff fails to demonstrate any link between her "whistle-blowing" and adverse employment action. Plaintiff merely incorporates by reference her arguments for the NJLAD claim. These claims require different proofs and Plaintiff has failed to meet her burden.

**4.** *Breach of Contract*

Plaintiff also asserts common law claims against Defendants' for breach of contract and tortious interference with with economic gain and employment. Both of these claims fail as matter of law.

To establish a breach of contract claim, Plaintiff must "show that the parties entered into a valid contract, that the defendant failed to perform his obligations under the contract and that the plaintiff sustained damages as a result." Murphy v. Implicito, 920 A.2d 678, 689 (N.J. App. Div. 2007). Plaintiff alleges that Defendants breached the Settlement Agreement by not giving her "continued employment" and the opportunity "to obtain tenure if she performed appropriately on evaluations just like every other secretary." Def's. Ex. K; Pl. Br. at 20. Plaintiff invokes the following provisions in support of her claim:

13

>§1(1) Ms. Goldberg would be working as a full time permanent secretary, most likely in the facilities or transportation. There would not be a probationary period
>
>§1(2) Ms. Goldberg would not have guaranteed tenure, Ms. Goldberg would have to perform appropriately on evaluations just like every other secretary. If Ms. Goldberg's evaluation indicated she needed significant improvement, a Personal Improvement Plan would be created that must be followed, otherwise appropriate discipline would occur. Just like any other secretary.
>
>§1(4) Ms. Goldberg would release and waive any and all claims up to and including this litigation.

Defendants did not breach any of the terms of the Settlement Agreement cited by Plaintiff. Contrary to Plaintiff's claim, the provisions of the Agreement do not promise Plaintiff's continued employment, but rather state that she would be treated like every other secretary and "would not have guaranteed tenure." More importantly, Plaintiff testified in her deposition that she knew the Settlement Agreement did not guarantee her employment beyond the 2008-2009 school year. Def's Ex. F at 77-78. Therefore, Plaintiff's breach of contract claim is without merit.

### 5. *Tortious Interference with Economic Gain and Employment:*

Finally, Plaintiff asserts that Defendants tortiously interfered with her economic gain and employment because they did not act in good faith towards her. To successfully establish a tortious interference claim, a plaintiff must prove that there is a reasonable expectation of economic advantage that defendants intentionally and maliciously interfered with. Varrallo v. Hammond Inc., 94 F.3d 842, 848 (3d Cir. 1996) (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., A.2d 31, 37 (N.J. 1989). Plaintiff must also prove a causal connection between the interference and the loss of prospective gain as well as actual damages. Id. Additionally, a

plaintiff must prove that Defendants acted "for personal motives, out of malice, beyond his authority, or otherwise not in good faith in the corporate interest." <u>Varrallo</u>, 94 F.3d. at 849.

Plaintiff cannot prove that Defendants acted intentionally, with malice, or beyond their authority. Thus, Defendants are entitled to summary judgment. Each individual defendant acted within their authority as an agent for the Board. Moreover, Plaintiff points to no evidence of malice or personal motivation. As previously noted by the Court, Defendants' decision not to renew Plaintiff's contract for the 2010-2011 school year involved a deliberative process. The School District was faced with an estimated $8,000,000 budget crisis. In response, they asked Mr. Rodrique to examine his department to determine whether any positions could be eliminated. Mr. Rodrique fulfilled this mandate and recommended downsizing Plaintiff's position. Accordingly, Plaintiff's tortious interference claim does not withstand this motion for summary judgment.

### IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED.** An accompanying Order shall issue today.


Dated: 3/28/2013                                                       /s/ Robert B. Kugler
                                                                                ROBERT B. KUGLER
                                                                                United States District Judge